**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **DELPHI BETA FUND, LLC, et al.** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | |
| | : | **NO.  14-2404** |
| **UNIVEST BANK AND TRUST CO., et al.** | : | |
| | : | |
| | : | |


**KEARNEY, J.**                                                      **March 27, 2015**

<u>OPINION</u>

Plaintiff hedge fund's former manager signed a bank promissory note and a bank guarantee to support its sizable investment in a hotel project.   The hedge fund is partially comprised of qualified money under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.*   The novel issue is whether, under an ERISA regulation known as the "Look Through Rule", defendant banks that collect on the hedge fund's defaulted loan obligations become ERISA fiduciaries and may collect on the loan obligations admittedly signed by the hedge fund.  Although Plaintiffs, as the hedge fund's new managing members, may have an ERISA claim against their hedge fund's former managers, neither Congress nor any other court has extended fiduciary duties to lenders in this context.   After studying the Amended Complaint's substantial detail, briefing and oral argument, we grant the Defendants' motions to dismiss as we will not extend ERISA's comprehensive statutory scheme to craft fiduciary duties upon lenders to non-ERISA hedge funds partially comprised of ERISA money.  We also find, based on the specific allegations, that Plaintiffs cannot state a claim that the lenders knowingly assisted in a prohibited transaction.

## I. Facts plausibly alleged in the Amended Complaint

Plaintiff Delphi Beta Fund LLC ("Beta Fund") is an investment fund - or "hedge fund"- into which some private investors invested "retirement money" through IRA and 401K savings. (*Id.* at ¶5)   Since late 2013, Plaintiffs Bruce J. Berg ("Berg") and Edward Budriss ("Budriss") have acted as Beta Fund's present managers. (*Id.* at ¶¶6-7)   Plaintiff Raymond J. Battaglia ("Battaglia") is a member of Beta Fund and is a "participant, fiduciary and beneficiary of the James Doorcheck, Inc. 401(k) Profit Sharing Plan which is also a member of Beta Fund" (the "Doorcheck plan").  (*Id.* at ¶8)  The Doorcheck plan did not sue.

Non-party CoreStates Investment Advisors, LLC ("CoreStates")[1] managed Beta Fund until November 2013, shortly after Corestates' President and CEO William Spiropoulos ("Spiropoulos") died.  (*Id.* at ¶¶11, 13)   CoreStates then turned control of Beta Fund over to "Beta Fund Members," who dismissed CoreStates and elected a management committee consisting of "Fund Members." (*Id.* at ¶12)   Beta Fund then discovered "improprieties" concerning a promissory note and guarantees signed by Beta Fund, through Spiropoulos.

### a. Pheasant Run borrows money from Univest.

In or around 2007 to 2008, Spiropoulos directed Beta Fund's purchase of a 22.5% equity interest in Pheasant Run Hotel, LLC ("Pheasant Run").[2] (*Id.* at ¶17)  Pheasant Run constructed, and owns and operates, a Homewood Suites hotel in Newtown, Pennsylvania. (*Id.* at ¶15)

---

[1]  Defendant Univest asserts that the CoreStates entity is actually named "CoreStates Capital Advisors, LLC," which Plaintiffs incorrectly identified as "CoreStates Investment Advisors, LLC."  (*See* ECF Doc. No. 18-2 at p. 3, n.2).

[2]  In August 2009, Spiropoulos, again acting through CoreStates, purchased an additional 3% equity interest in Pheasant Run on behalf of Beta Fund using Beta Fund's money.  (Am. Compl. at ¶21)  Thus, Beta Fund now owns a 25.5% equity interest in Pheasant Run.

In August 2008, Pheasant Run signed a $12,500,000 promissory note payable to Univest Bank and Trust Co. ("Univest") (the "Construction Loan"). (*Id.* at ¶18) Spiropoulos agreed to personally guarantee the entire amount.[3] (Ex. A. to Am. Compl., ECF Doc. No. 15). Beta Fund is not mentioned in the Construction Loan.

### b. Beta Fund borrows money from Univest in December 2011.

Over three years later, on December 29, 2011, Beta Fund signed a $625,000 promissory note payable to Univest based on Beta Fund's "Authorization" signed by its manager Spiropoulos. ("625K Loan"). (Am.Compl. at ¶¶22-23 and Ex. B.) Spiropoulos represented that Beta Fund borrowed the money for "business investment purposes." (*Id.* at ¶24) Spiropoulos allegedly misrepresented this loan's true purpose and concealed the 625K Loan from Beta Fund, its auditors, CoreStates' personnel, and regulators from the Securities and Exchange Commission. (*Id.* at ¶¶25-26) Although Spiropoulos, as Beta Fund's Manager, represented the borrowing as a "general purpose 'line of credit'" for Beta Fund, Univest demanded payment of $625,000 on the Construction Loan by December 31, 2011. (*Id.* at ¶¶26-30) Univest tendered a $625,000 check to Beta Fund, but Spiropoulos endorsed the check over to Pheasant Run and deposited the check in Pheasant Run's account. (*Id.* at ¶¶31-33) He then authorized Univest to immediately pay $625,000 in principal on the Construction Loan.[4] (*Id.*) Plaintiffs plausibly

---

[3] Plaintiffs allege that Spiropoulos' surety agreement remained in effect at the time of Spiropoulos' death and is a continuing obligation of his estate. (*Id*. at ¶19)

[4] Univest confessed judgment against Beta Fund in the Bucks County Court of Common Pleas at *Univest Bank and Trust Co. v. Delphi Beta Fund, LLC,* No. 2013-08459. Beta Fund filed a petition to open or strike the confessed judgment ("Petition"). (Am.Compl. at ¶56) Univest alleges that Beta Fund asserted sixteen (16) counterclaims and/or affirmative defenses against Univest including claims "that are virtually identical to the claims asserted" in Plaintiffs' Amended Complaint here. (*See* ECF Doc. No. 18-3 at ¶¶3-4)

allege that Spiropoulos abused Beta Fund to borrow $625,000 in December 2011 to pay down a construction loan for a non-party hotel in which Beta Fund is a 22.5% investor.

### c. Pheasant Run borrows, with Beta Fund's guaranty, money from MileStone.

On April 25 and April 27, 2012, Pheasant Run borrowed $1,825,000 from MileStone Bank ("MileStone" and "MileStone Loan").[5] (*Id.* at ¶¶57-58)  MileStone recorded a second mortgage against Pheasant Run behind Univest's Construction Loan. (*Id.* at ¶59)  Beta Fund, under Spiropoulos' signature, signed a guaranty of the MileStone Loan. (*Id.* at ¶61)  Beta Fund agreed to maintain $1,825,000 in a MileStone account. (*Id.* at ¶62)   Beta Fund now alleges that Spiropoulos concealed this guaranty from Beta Fund, even though he was Beta Fund's manager. (*Id.* at ¶ 63)  Spiropoulos signed a "Resolution of Limited Liability Company Member" stating that CoreStates is a member of Beta Fund and that the Beta Fund members met and approved the guaranty. (*Id.* at ¶68)  As alleged, CoreStates was not a member of Beta Fund and Beta Fund's members did not meet to approve the guaranty. (*Id.*)   When Spiropoulos died in June 2013, MileStone treated his death as a loan default and seized Beta Fund's $1,825,000 deposit.  (*Id.* at ¶¶69-72)

## II.  Analysis

Plaintiffs attempt to craft fiduciary obligations on lenders through a regulation known as the "Look Through Rule" which defines "plan assets" under ERISA.  *See* 29 C.F.R. §2510.3-101(a)(2).  Plaintiffs allege that the "Look Through Rule" applies to Beta Fund, thus granting it fiduciary status to bring ERISA breach of fiduciary claims against Univest and MileStone, two banks that entered into loan transactions with the now deceased manager of Beta Fund.  While

---

[5] We refer to both loans – the April 25, 2012 loan in the amount of $1,725,000 and the April 27, 2012 loan in the amount of $100,000 – between Pheasant Run and MileStone collectively as the "MileStone Loan." Plaintiffs allege both loans violate ERISA fiduciary duties.

the "Look Through Rule" may impose ERISA's fiduciary duties *upon the Plaintiffs* to certain ERISA-qualified plans invested in it, Plaintiffs provide no legal authority to the Court that the Look Through Rule's definition of "plan assets" is a vehicle to assert ERISA fiduciary duty claims against two banks with no relationship to an ERISA plan. As such, the Court declines to take this leap with Plaintiffs.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim;'" (2) "the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)

(quoting *Iqbal*, 556 U.S. at 675, 679) (footnote omitted)[6]; *see also*, *Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) ("This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.")

### A. ERISA analysis

Individual plaintiffs assert ERISA claims. ERISA is a "comprehensive and reticulated statute" containing a "carefully integrated civil enforcement provision" set out in §502(a), 29 U.S.C. §1132(a). *See Mass. Mutual Life Ins. Co v. Russell*, 473 U.S. 134, 146-47 (1985) (citations omitted). Plaintiffs here must be participants, beneficiaries or fiduciaries of an ERISA plan to have standing to bring a civil action under ERISA. *See* 29 U.S.C. §1132(a)(1), (2), and (3). Plaintiffs assert that they are ERISA fiduciaries, by application of the "Look Through Rule," to certain unnamed ERISA plans as well as the Doorcheck plan, and, based solely on the application of the "Look Through Rule," have standing to assert various breach of fiduciary duty claims under ERISA against Univest and MileStone and to impose upon Univest and MileStone ERISA's fiduciary duties.

---

[6] "*Iqbal* describes the process as only a 'two-pronged approach.' It preceded that description, however, by noting that it is often necessary to 'begin by taking note of the elements a plaintiff must plead to state a claim.' Thus, we view *Iqbal* as outlining three steps." *Santiago*, 629 F.3d at 130, n.7 (internal quotations to *Iqbal* omitted).

### 1. The "Look Through Rule"

The "Look Through Rule" under Department of Labor ("DOL") regulation, 29 C.F.R. §2510.3-101, defines an ERISA "plan asset."[7]  It describes when assets of an entity in which a plan invests will be considered to include ERISA "plan assets" so that the managers of the entity are subject to the fiduciary responsibility rules of ERISA.

The regulation is expressed in the form of a general rule, with a carved out exception:

> Generally, when a plan invests in another entity, the plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity.  *However, in the case of a plan's investment in an equity interest of an entity that is neither a publicly-offered security nor a security issued by an investment company* registered under the Investment Company Act of 1980, *its assets include both the equity interest and an undivided interest in each of the underlying assets of the entity, unless it is established that* – (i) the entity is an operating company, or (ii) *equity participation in the entity by benefit plan investors is not significant.*

29 C.F.R. §2510.3-101(a)(2) (emphasis added).

---

[7]  In 1986, DOL issued the "Look Through Rule," 29 C.F.R. §2510.3-101(a)(2), to define "plan assets." *See* Final Regulation Relating to the Definition of Plan Assets, 51 Fed. Reg. 41262-01 (Nov. 13, 1986) (to be codified at 29 C.F.R. pts. 2509, 2510, and 2550). In 2006, ERISA was amended by the Pension Protection Act of 2006 which, *inter alia*, added the term "plan assets" to ERISA's definition section codified at 29 U.S.C. §1002(42).  *See* Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780 (2006).  Section §3(42) defines the term "plan assets":

> plan assets as defined by such regulations as the Secretary may prescribe, except that under such regulations the assets of any entity shall not be treated as plan assets if, immediately after the most recent acquisition of any equity interest in the entity, less than 25 percent of the total value of each class of equity interest in the entity is held by benefit plan investors. For purposes of determinations pursuant to this paragraph, the value of any equity interest held by a person (other than such a benefit plan investor) who has discretionary authority or control with respect to the assets of the entity or any person who provides investment advice for a fee (direct or indirect) with respect to such assets, or any affiliate of such a person, shall be disregarded for purposes of calculating the 25 percent threshold. An entity shall be considered to hold plan assets only to the extent of the percentage of the equity interest held by benefit plan investors. For purposes of this paragraph, the term "benefit plan investor" means an employee benefit plan subject to part 4, any plan to which section 4975 of Title 26 applies, and any entity whose underlying assets include plan assets by reason of a plan's investment in such entity.

29 U.S.C. §1002(42).

If a plan's investment in an equity interest meets the exception from the general rule, then "any person who exercises authority or control respecting the management or disposition of such underlying assets, and any person who provides investment advice with respect to such assets for a fee (direct or indirect), is a fiduciary of the investing plan." 29 C.F.R. §2510.3-101(a)(2). A plan's investment is "significant"[8] when 25% or more of the value of any class of equity interests in the entity is held by "benefit plan investors."[9] *See* 29 C.F.R. §2510.3-101(f)(1).

Here, certain unnamed private investors, as well as the Doorcheck plan, invested "retirement money from accounts such as IRA's and 401k's." in Beta Fund (Am.Compl. at ¶¶5, 8) "At all relevant times, twenty-five percent or more of the value of any class of equity interests in Beta Fund was held by benefit plan investors as defined by 29 CFR §2510.3-101(f)". Plaintiffs allege "a significant portion of the funds invested in Beta Fund were and are from retirement benefit plan investors, including rollover IRA's, 401k Plans and/or other retirement

---

[8] "Significant" is defined:

> Equity participation in an entity by benefit plan investors is "significant" on any date if, immediately after the most recent acquisition of any equity interest in the entity, 25 percent or more of the value of any class of equity interests in the entity is held by benefit plan investors (as defined in paragraph (f)(2)). For purposes of determinations pursuant to this paragraph (f), the value of any equity interests held by a person (other than a benefit plan investor) who has discretionary authority or control with respect to the assets of the entity or any person who provides investment advice for a fee (direct or indirect) with respect to such assets, or any affiliate of such a person, shall be disregarded.

29 C.F.R. §2510.3-101(f)(1).

[9] A "benefit plan investor" is defined:

> (i) Any employee benefit plan (as defined in section 3(3) of the Act), whether or not it is subject to the provisions of title I of the Act,
> (ii) Any plan described in section 4975(e)(1) of the Internal Revenue Code,
> (iii) Any entity whose underlying assets include plan assets by reason of a plan's investment in the entity.

29 C.F.R. §2510.3-101(f)(2).

plans subject to ERISA." (Am.Compl. at ¶¶14, 50-51)  Based on these allegations, Plaintiffs seek to apply the "Look Through Rule" to Beta Fund and, in turn, to Univest and MileStone as lenders to Beta Fund.[10]

## 2. ERISA Breach of Fiduciary Duty Claims

Plaintiffs must state elements of an ERISA breach of fiduciary duty: "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Chaaban v. Criscito*, 468 F. App'x 156, 161-62 (3d Cir. 2012) (citing *Leckey v. Stefano*, 501 F.3d 212, 225–26 (3d Cir.2007)). ERISA sections 401 through 414 prescribe "fiduciary responsibility" standards of conduct.

ERISA §404(a) identifies the "prudent man" standard of care for an ERISA fiduciary. It requires a fiduciary to discharge duties with respect to a plan solely in the interest of the participants and beneficiaries of the plan.[11] *See* 29 U.S.C. §1104(a)(1)(A), (B).  Section 406 prohibits fiduciaries from entering into certain "prohibited transactions."[12] *See* 29 U.S.C.

---

[10]  The parties devote a substantial portion of their briefing on the issue of whether IRAs and 401k plans are subject to ERISA so as to be considered "plan assets" for purposes of the "Look Through Rule." The Court will not address this issue, finding that even if sufficiently pled under the standards of *Iqbal* and *Twombly*, the "Look Through Rule" does not impose ERISA fiduciary duties on Univest and MileStone.

[11] Section 404(a)(1) provides in relevant part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and - - (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

29 U.S.C. §1104(a)(1).

[12] Section 406(b) pertains to "transactions between plan and fiduciary":

> A fiduciary with respect to a plan shall not-- (1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in

§1106(b). Section 405(a) imposes liability upon a fiduciary for breaches of duty by his co-fiduciary.[13] *See* 29 U.S.C. §1105(a).

Section 409(a) imposes personal liability upon a plan fiduciary to "make good to such plan any losses to the plan resulting from each such breach," for restitution to the plan, and for "such other equitable or remedial relief as the court may deem appropriate." *See* 29 U.S.C. §1109(a)[14]; *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252-53. ERISA §502(a)(2) permits civil

---

any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. §1106(b).

[13] Section 405(a) provides:

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. §1105(a).

[14] Section 409, entitled "Liability for breach of fiduciary duty" provides:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title."

29 U.S.C. §1109(a).

actions by a "participant, beneficiary, or fiduciary for appropriate relief under section 1109."[15] *Mertens*, 508 U.S. at 252-53.

### a. **Univest and MileStone are not fiduciaries of an ERISA plan**

Plaintiffs' claim requires that we first find that Univest and MileStone are fiduciaries *of Beta Fund* and breached their fiduciary duties under §§404, 405(a), and 406(b). We do not accept this premise. Even if Beta Fund and its managers are fiduciaries to qualified funds under the "Look Through Rule", which we need not decide today, Plaintiffs' status as ERISA fiduciaries does not transform Univest and MileStone into fiduciaries to any ERISA plan.

There are only three ways to acquire ERISA fiduciary status: "(1) being named as the fiduciary in the instrument establishing the employee benefit plan, 29 U.S.C. § 1102(a)(2); (2) being named as a fiduciary pursuant to a procedure specified in the plan instrument, *e.g.*, being appointed an investment manager who has fiduciary duties toward the plan, 29 U.S.C. § 1102(a)(2); 29 U.S.C. § 1002(38); and (3) being a fiduciary under the provisions of 29 U.S.C. § 1002(21)(A)." *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1179 (3d Cir. 1996).

Here, Plaintiffs allege that Univest and MileStone are fiduciaries *of Beta Fund* under the third avenue:

> a person is a fiduciary with respect to a plan to the extent (i) **he exercises any discretionary authority or discretionary control respecting management**

---

[15] ERISA's civil enforcement §502(a)(2) provides that a civil action may be brought by "a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. §1132(a)(2). The Amended Complaint does not identify the civil enforcement section(s) sought to be applied. Counts I and VI are claims for "Breach of Fiduciary Duty under 29 U.S.C. §1104" alleging that Univest and MileStone breached fiduciary duties to a "plan" and are liable to "make good any losses to the plan" under §409(a), 29 U.S.C. §1109(a). (Am.Compl. at ¶¶91, 127) Plaintiffs' claims for breaches of fiduciary duties under §405 (co-fiduciary breach) and under §406(b) (participating in a prohibited transaction) are similarly enforced through §502(a)(2). *Mertens*, 508 U.S. at 252-53; *Nagy v. DeWese*, 771 F. Supp. 2d 502, 509 (E.D. Pa. 2011).

> **of such plan or exercises any authority or control respecting management or disposition of its assets**, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. §1002(21)(A) (emphasis added).

Plainly, "a person is a fiduciary *with respect to a plan*" to the extent he performs any of the functions set out in subsections (i), (ii), or (iii). Here, Plaintiffs allege that Univest and MileStone exercised control *over Beta Fund* and thus "exercised control" over Beta Fund's assets. Specifically, Beta Fund alleges that Univest exercised control over Spiropoulos, induced Spiropoulos to "engage in unusual transactions," and concealed the 625K Loan from Beta Fund. (Am.Compl. at ¶55) Plaintiffs further allege that the 625K Loan was of an "unusual nature," pointing to Spiropoulos' endorsement of the check to Pheasant Run to pay down the Construction Loan. (*Id.*) As to MileStone, Plaintiffs allege that it was a fiduciary under §1002(21)(A)(i) because it exercised "discretionary control" over the $1,825,000 deposited in MileStone as a condition of Beta Fund's guaranty. (*Id.* at ¶81) Plaintiffs allege that MileStone exercised "discretionary control" over Beta Fund's assets when it "seized" the $1,825,000 on Spiropoulos' death and its "continuing refusal to return those funds to Beta Fund." (*Id.*)

Beta Fund, however, is not an ERISA "plan," "employee pension benefit plan," or a "pension plan."[16] Beta Fund is a hedge fund. Plaintiffs conceded at oral argument that the "Look Through Rule" does not make Beta Fund an ERISA plan.

---

[16] ERISA defines "employee pension benefit plan" and "pension plan" to mean "any plan, fund, or program which . . . is . . . established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program -- (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . ." 29 U.S.C. §1002(2)(A). Similarly, ERISA defines "employee welfare benefit plan" and "plan" to mean "an

Instead, Plaintiffs argue that the "Look Through Rule" transforms all fiduciaries to Beta Fund into fiduciaries to the underlying ERISA plans investing in Beta Fund. Plaintiffs fail to cite any case that Beta Fund's alleged fiduciary duties are applied to a third party lending money to Beta Fund. If we accept Plaintiffs' argument, virtually anyone dealing with Beta Fund could be charged with ERISA's fiduciary duties. There is no ERISA plan over which Univest or MileStone had any control and there are no facts alleging any relationship between any of the plans invested in Beta Fund and Univest and MileStone. As plead based on information presumably within its control as the signatory on the promissory note and guaranty, there is no pleading of "control" over Beta Fund in the same manner as Spiropoulos or Corestates. From a liberal reading of the Amended Complaint, he banks here entered into arms-length commercial loans signed by Spiropoulos acting through CoreStates, the manager of Beta Fund at the time the loans were made. *See Useden v. Acker*, 947 F.2d 1563, 1575 (11th Cir. 1991) ( rejecting argument that the bank's "mere exercise of its contractual rights made the bank an alter ego of the named Plan fiduciaries," and finding the bank's exercise of its rights under loan agreements did not amount to management or control of the plan itself); *see also United Food & Commercial Workers Local 1776 v. Zallie*, No. 96-3004, 1997 WL 14472, *2-*3 (E.D. Pa. Jan. 15, 1997) (defendants' rights under lease and security agreements do not create discretionary control over health and welfare fund necessary to create ERISA fiduciary status).

Plaintiffs conceded at oral argument that a hedge fund's money deposited in a bank as part of an arms-length commercial transaction, where a bank is a "plain vanilla custodian," does not constitute "control" over Beta Fund's assets needed to come within the definition of

---

employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. §1002(3).

"fiduciary" under ERISA.[17]    Plaintiffs' argument is that Univest's 625K Loan and the

MileStone Loan were more than "plain vanilla" transactions.    Plaintiffs rely on *Srein v. Frankford Trust Co*., 323 F.3d 214 (3d Cir. 2003) to argue that Univest and MileStone were more than "plain vanilla" custodians of plan assets and, instead, "controlled" plan assets making them ERISA fiduciaries under §3(21)(A)(i), 29 U.S.C. §1002(21)(A)(i).    In *Srein*, two pension plans purchased interests in the same life insurance policy. The defendant bank, Frankford Trust, was the trustee of both plans and, without direction from the plaintiff plan, erroneously distributed assets of the plaintiff ERISA plan to another customer. *Srein*, 323 F.3d at 220-222. The court found that defendant bank exercised "undirected authority and control" over plan assets and thus functioned as a fiduciary.    *Id*. at 221-22.    Here, Plaintiffs' allegations do not rise to anything other than a typical loan entered into by Spiropoulos, the manager of Beta Fund at the time, and Univest and MileStone.    Plaintiffs do not allege any facts to support their allegation that the banks here did anything other than enter into a loan regarding construction of a hotel project and then act in accord with their contractual remedies, including requiring a principal reduction by year end 2011.    *See Useden*    Beta Fund, through its manager Spiropoulos, answered Univest's demand and borrowed money through Beta Fund for the necessary principal reduction.

---

[17] Plaintiffs concede that the cases cited by Defendants support the general proposition that a "plain vanilla custodian" of plan assets, or one who performs ministerial tasks for an ERISA plan, does not create fiduciary duties under §3(21)(A), 29 U.S.C. §1002(21)(A). *See e.g. Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011); *Askew v. R.L. Reppert, Inc.*, 902 F.Supp. 2d 676 (E.D. Pa. 2012); *Nagy v. DeWese*, 771 F.Supp. 2d 502 (E.D. Pa. 2011); *Fechter v. Conn. General Life Ins. Co*., 800 F.Supp. 182 (E.D. Pa. 1992); *Trustees of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.*, 783 F.Supp. 899 (D.N.J. 1992); *Useden v. Acker*, 947 F.2d 1563 (11th Cir. 1991). Plaintiffs distinguished Defendants' authority, and argued that the *Srein* case is more applicable here because Univest "directed," "demanded" and "controlled" the 625K Loan and MileStone "controlled" Beta Fund's assets when it "seized" the $1,825,000 when the loan defaulted under its terms.

Further, the remedy for a breach of fiduciary duty is "to make good to *such plan* any losses *to the plan* resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets *of the plan* by the fiduciary . . .." 29 U.S.C. §1109(a) (emphasis added). Under §409(a), any fiduciary *with respect to a plan* "who breaches any of the responsibilities, obligations, or duties" imposed upon him is personally liable "to make good to such plan any losses *to the plan*" (emphasis added) resulting from the breach. *Id.* We do not have an ERISA plan in this case seeking to recover losses.

At oral argument, Plaintiffs cited to a recent opinion from the esteemed Judge Mary McLaughlin of this district captioned *Perez v. Koresko*, No. 09-988, 2015 WL 505471 (E.D. Pa. Feb. 6, 2015), to argue that the Court could use the "Look Through Rule" to provide relief to the plans invested in Beta Fund. Plaintiffs argued that the *Perez* case applied the "Look Through Rule" to the defendants, ordering them to restore funds to the "investment vehicles" invested in defendants. In *Perez*, Defendant Koresko and the corporate entities he controlled were the Plan Administrator and Trustee of a VEBA[18] and SEWBPT[19]. *Perez*, 2015 WL 505471 at *14. The court found the defendants breached their fiduciary duties by misappropriating, mishandling, and diverting tens of millions of dollars of plan assets through more than 21 accounts in the names of more than 19 different entities at 8 or more different banks, in addition to the transfer of plan assets directly out of employee benefit trust accounts to parties in interest. *Perez*, at *86. The court cited the "Look Through Regulation" as a basis to define "plan assets" for purposes of determining the plans subject to ERISA in the DOL's action against the defendants. *Perez*, at *71. Contrary to Plaintiffs' argument, Judge McLaughlin in *Perez* did not order restoration of the diverted plan assets to a hedge fund. Finding the defendants to have breached their fiduciary

---

[18] Voluntary Employees' Beneficiary Association

[19] Single Employer Welfare Benefit Plan Trust

duties, the court ordered restitution and disgorgement to the plans invested in the VEBA Trusts and SWEPB Trusts. *Id.* at *86-87.

Finally, even if the "Look Through Rule" applies to Beta Fund, there are no facts only formulaic conclusions, that Univest or MileStone knew that Beta Fund was an ERISA fiduciary to certain plans invested in it because of the "Look Through Rule." Liability for a breach of a co-fiduciary's duty requires a "knowing participation." *See Mertens*, 508 U.S. 254 (citing §405(a), 29 U.S.C. §1105(a)). Plaintiffs allege only that Univest "knew or should have known that Beta Fund was governed by ERISA because, *inter alia*, this possibility is expressly noted in Beta Fund's Operating Agreement." (Am.Compl. at ¶52) There are no allegations regarding MileStone's knowledge. These allegations fail to satisfy the plausibility standard of *Iqbal* and *Twombly*. Based on these allegations, the Court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678).

For the foregoing reasons, the Court finds that as a matter of law neither Univest nor MileStone were fiduciaries to any ERISA plan. *See Pegram v. Herdick*, 530 U.S. 211, 226 (2000) (in every case charging breach of ERISA fiduciary duty, the threshold question is whether the defendant was acting as a fiduciary, by performing a fiduciary function, when taking the action subject to complaint). Without such fiduciary status, Plaintiffs' claims against Univest and Milestone for breach of fiduciary duty under §404 and assisting in the breach of a co-fiduciary's duty under §405(a) fail to state a claim. Similarly, because Univest is not a fiduciary of any plan, it cannot be liable under §406(b) for participating in a prohibited transaction between a plan and fiduciary. *See* 29 U.S.C. §1106(b).

### b. Assisting in a Prohibited Transaction

In Counts IV and VII, Plaintiffs allege that Univest and MileStone each "assisted" Spiropoulos in "prohibited transactions" in violation of §406(a) and (b), 29 U.S.C. §1106(a), (b). The "assisting in a prohibited transaction" claims require a different analysis than the breach of fiduciary duty claims analyzed *supra*.

Section 406(a) of ERISA prohibits certain transactions between a plan fiduciary and a "party in interest." 29 U.S.C. §1106(a). Section 406(b), as set forth above, prohibits certain transactions between a plan and a fiduciary. 29 U.S.C. §1106(b). Section 502(a)(3) of ERISA's civil enforcement section authorizes a "participant, beneficiary or fiduciary" of a plan to bring a civil action for "appropriate equitable relief" to redress violations of Title I of ERISA, including §406, 29 U.S.C. §1132(a)(3). A claim under §502(a)(3) by a participant, beneficiary, or fiduciary of an ERISA plan may be brought against a non-fiduciary to a transaction prohibited by §406(a)(1). *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245-46 (2000); *see also National Security Systems, Inc. v. Iola*, 700 F.3d 65, 90-91 (3d Cir. 2012) ("*Iola*").

In *Iola*, the Court of Appeals, analyzing *Harris Trust*, held that a non-fiduciary financial planner for several employee welfare plans could be held liable for "appropriate equitable relief" under civil enforcement §502(a)(3) for knowing participation in a fiduciary's violation of a §406(b) prohibited transaction. *Iola*, 700 F.3d at 90-93. Plaintiffs argue that under *Harris Trust* and *Iola*, they need not allege that Univest and MileStone were fiduciaries of Beta Fund or "parties in interest" to be liable for assisting in a transaction prohibited by §406(a) and (b).

As to Univest, Plaintiffs allege that Univest assisted Spiropoulos in the 625K Loan, a prohibited transaction. (Am.Compl. at ¶106) Plaintiffs allege that Univest demanded, negotiated and entered into the 625K Loan, concealed it from Beta Fund, sent loan statements to Pheasant

Run, concealed the true purpose of the loan in the loan documents, and failed to "alert" Beta Fund to the existence of the transaction. (*Id.*) As to MileStone, Plaintiffs allege that it assisted Spiropoulos in the commercial guaranty, a prohibited transaction. (*Id.* at ¶139) Defendants argue that Beta Fund is not a "plan" and there can be no "prohibited transaction" without an ERISA plan. Defendants additionally argue Plaintiffs fail to allege "self-dealing" with the assets of any plan, as the proceeds of the loans were the banks' money, not Beta Fund's money, and Beta Fund failed to establish that its assets should be considered "plan assets."

The Court finds, as a matter of law, that neither Univest nor MileStone assisted in a prohibited transaction under §406(a) or (b). First, §406 prohibits transactions between *a plan* and a party in interest and *a plan* and a fiduciary. *See* 29 U.S.C. §1106(a), (b). The alleged prohibited transactions – the 625K Loan and the MileStone Loan – were made between the banks and Spiropoulos acting through CoreStates as the manager of Beta Fund. As shown, Beta Fund is not an ERISA plan. Secondly, a claim for assisting in a prohibited transaction requires a "knowing participation." *Iola*, 700 F.3d at 90-93. There are no allegations sufficient to meet the standards of *Iqbal* and *Twombly* that either Univest or MileStone "knowingly" participated in a transaction involving any ERISA plan. Again, Plaintiffs' claims are bootstrapped from the application of the "Look Through Rule" and assumes the lenders knew that Beta Fund was an ERISA fiduciary. There are no allegations, other than conclusory statements that Univest and MileStone "had actual or constructive knowledge of all the circumstances" which rendered each of the loans "improper" under ERISA.[20] (*See* Am.Compl. at ¶¶107, 140).

## B. ERISA "Common Law" Claims

---

[20] We do not foreclose the possibility that, based on further discovery in the ongoing state court matters, that Beta Fund may be able to sufficiently plead the banks' extraordinary control such that they, in fact, acted as the Beta Fund manager instead of, or along with, CoreStates and Spiropoulos.

Plaintiffs also hope to craft ERISA "common law" claims because ERISA itself does not provide a remedy. The Court will not do so.

We can craft ERISA common law claims where it is "necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Mazza v. Sheet Metal Workers' National Pension Fund*, 410 F.App'x 464, 467 (3d Cir. 2010) (citing *Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1056 (3d Cir. 1989)). The Court of Appeals emphasizes that any court-fashioned common law cause of action must be made in the context of the equities of a case and to fill in the gaps of ERISA. *Mazza,* 410 F.App'x at 467-68; *Plucinski*, 875 F.2d at 1057-58.  A federal court "should not easily fashion an equitable remedy, under the guise of federal common law, that contravenes ERISA's carefully crafted statutory scheme." *Mazza*, 410 F.App'x at 468-69 (quoting *Van Orman v. American Ins. Co.*, 680 F.2d 301, 312 (3d Cir. 1982) ("Where Congress has established an extensive regulatory network and has expressly announced its intention to occupy the field, federal courts will not lightly create additional rights under the rubric of federal common law."))

Plaintiffs ask this Court to fashion common law remedies "to the extent ERISA does not expressly prohibit" Univest's and MileStone's alleged improper conduct in connection with the loans.[21] Plaintiffs, however, failed to identify, either in their briefing or at oral argument, the gaps in ERISA the Court should fill by creating such common law remedies.  In fact, the common law claims Plaintiffs seek to assert here, such as fraud, aiding and abetting fraud, and breach of fiduciary duties, are all subsumed within ERISA's statutory scheme. Sections 401

---

[21] Plaintiffs seek to assert ERISA common law claims against Univest for fraud, aiding and abetting fraud, equitable rescission of the loan, concealment, conversion, unjust enrichment, and breach of contract, and against MileStone for fraud, aiding and abetting fraud, breach of fiduciary duty, aiding and abetting in the breach of fiduciary duties, rescission, conversion, breach of contract, bad faith, unclean hands, and unjust enrichment.

through 414 of ERISA set out "fiduciary responsibility" standards of conduct which, if breached by an ERISA fiduciary, may be enforced through §502(a)(2) of ERISA. *See* 29 U.S.C. §1101 – 1114 (fiduciary responsibility) and §1132(a)(2) (civil enforcement section providing a cause of action by a participant, beneficiary or fiduciary for appropriate relief for liability for breaches of fiduciary duties).

The issue is not that there are gaps in ERISA for the Court to fill. The issue is that Univest and MileStone are not fiduciaries *to a plan* because, under the facts alleged, neither bank exercised any "authority or control respecting management or disposition" of *any ERISA plan assets* simply because they entered into loan transactions with Spiropoulos, the manager of Beta Fund at that time. While our Court of Appeals has recognized certain ERISA common law claims, Plaintiffs do not provide any authority that our Court of Appeals could imply a common law remedy for Plaintiffs to use the "Look Through Rule" against third-party banks such as Univest and MileStone under the present facts.[22] Accordingly, Counts V and IX are dismissed.

### C.  Plaintiffs lack ERISA standing under the Look Through Rule.

Plaintiffs also lack standing to sue Univest and MileStone under the "Look Through Rule".

Plaintiffs invoke standing through a bootstrap syllogism: Beta Fund is subject to the "Look Through Rule;" the "Look Through Rule" makes all of Beta Fund's assets "plan assets;" Beta Fund's managers owe fiduciary duties to the plan assets invested in Beta Fund; fiduciaries may bring civil actions under ERISA; therefore, Plaintiffs have standing. Plaintiffs did not cite,

---

[22] *See e.g. Plucinski,* 875 F.2d at 1057-58 (3d Cir. 1989) (finding a common law equitable cause of action by employers for the recovery of contributions erroneously paid to pension funds due to mistake of fact or law to fill in the interstices of §403 of ERISA and to further the purposes of ERISA); *Carl Colteryahn Dairy, Inc. v. Western Penn. Teamsters & Employers Pension Fund,* 847 F.2d 113, 115, 121-22 (3d Cir.1988) (holding that under ERISA common law a defrauded employer has a cause of action for the return of any sums that were fraudulently assessed by a pension plan).

either in their briefing or at oral argument, to any legal authority applying the "Look Through Rule" to confer ERISA standing on a hedge fund to bring ERISA breach of fiduciary claims against banks such as Univest and MileStone who entered into a loan transaction with the manager of the hedge fund that allegedly owes a fiduciary duty to plans invested in the hedge fund. Plaintiffs cite only to a 2006 "Report of the Working Group on Plan Asset Rules, Exemptions and Cross-Trading" produced by the Advisory Council on Employee Welfare and Pension Benefit Plans created to provide advice to the Secretary of Labor and a 2007 article from *The Investment Lawyer* entitled "What to Do if Your Fund Becomes Subject to ERISA." (*See* ECF Doc Nos. 20-2, 20-3) Upon a review of these advices, neither supports Plaintiffs' position.

While the "Look Through Rule" may give *Beta Fund's* managers and its investors (presumably participants in or beneficiaries of the plans invested in Beta Fund) a claim against CoreStates and/or Spiropoulos' estate for breaches of their fiduciary duties, we are not aware of any basis that Beta Fund, by virtue of fiduciary duties to the plan assets imposed upon them by the "Look Through Rule," has standing to *assert* affirmative claims against third parties not involved in Beta Fund's operations.[23] We do not agree that Beta Fund's possible fiduciary duty to ERISA plans investing in it allows Beta Fund to turn and sue lenders as to essentially invalidate loan guarantees and a promissory note signed by Beta Fund's manager. Otherwise, replacement hedge fund managers of funds with partial qualified money would be able to escape

---

[23] In *Court Appointed Received of Lancer Offshore, Inc.. v. Citco Group, LTD.*, Civ.A. No. 05-60080, 2008 WL 926509 (S.D. Fl. Mar. 31, 2008) ("*Lancer Offshore*"), a court appointed receiver of two hedge funds brought common law claims and ERISA breach of fiduciary duty claims against the former directors of the hedge funds. The court rejected the former directors' argument that the receiver lacked standing to bring ERISA claims, finding that the receiver sufficiently alleged application of the "Look Through Rule" regulation making the receiver an ERISA fiduciary with standing to assert ERISA claims with respect to the underlying assets of the hedge funds. *See* 2008 WL 926509 at *7-*9. The facts are distinguishable. There, the receiver of the hedge funds brought an action against *former directors and administrators of the hedge funds* for breaches of their fiduciary duties, not against any third party such as a bank. We agree with the reasoning in *Lancer Offshore* but that is not the claim in this case.

loan obligations signed by their predecessor managers. Lenders would then be at the mercy of new hedge fund managers who disagree with loans authorized and signed by earlier hedge fund managers. *See Useden* and *Zallie*. We do not understand any part of ERISA's comprehensive scheme to allow this type of claim against third party lenders.

Outside of Beta Fund's and its members' lack of standing, Plaintiffs allege that <u>Battaglia</u> individually has standing as a participant, fiduciary and beneficiary of the Doorcheck plan which invested its allegedly qualified funds in Beta Fund. (Am.Compl. at ¶8) Battaglia may, as a fiduciary of the Doorcheck plan, like Beta Fund itself, owe duties to the participants and beneficiaries of the Doorcheck plan for its possibly imprudent investment in Beta Fund. As a participant in the Doorcheck plan, Battaglia may have a claim against Beta Fund. Plaintiffs do not allege that the Doorcheck plan has an independent claim against Univest or MileStone. The sole allegation relating to the Doorcheck plan is that it is a member of Beta Fund. (*Id.* at ¶8) There is no allegation that Univest or MileStone owed a fiduciary duty directly to the Doorcheck plan. Accordingly, Battaglia's standing against Univest and MileStone is based on an ERISA fiduciary duty. As explained earlier, the duty arises from the application of the "Look Through Rule" to Beta Fund, and we find that attempt fails as a matter of law.

### D. The Court declines to exercises its supplemental jurisdiction over state law claims against MileStone

In Counts X through XVII, Plaintiffs allege various state law claims against MileStone. MileStone seeks dismissal of these state law claims, arguing that the Court should decline to exercise its supplemental jurisdiction over the state law claims. Pursuant to §1367(c), a district court may decline to exercise supplemental jurisdiction over a claim under §1367(a) if:

> (1)      the claim raises a novel or complex issue of State law,
> (2)      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).

The decision to retain or decline jurisdiction over state law claims is discretionary. *Katch v.* Hose, 589 F.3d 626, 650 (3d Cir. 2009). Under §1367(c), the Court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." Having dismissed Plaintiffs' ERISA claims, the Court declines, pursuant to §1367(c), to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims against MileStone. "Absent extraordinary circumstances, 'jurisdiction [over claims based on state law] should be declined where the federal claims are no longer viable." *Kalick v. Northeast Airlines Corp.*, 372 F.App'x 317, 322 (3d Cir. 2010) (citing *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir.1984)); s*ee also American Chiropractic Ass'n v. American Specialty Health Inc.,* 14 F.Supp. 3d 619, 631 (E.D. Pa. 2014). Plaintiffs do not cite to any exceptional circumstances favoring the retention of jurisdiction here. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Milestone. Plaintiffs' state law claims are dismissed without prejudice. *Kach*, 589 F.3d at 650.

## III.  <u>Conclusion</u>

Plaintiffs' ERISA claims for breach of fiduciary duty against lenders to Beta Fund based on Beta Fund's signed authorizations on a promissory note to Univest and a guaranty to MileStone do not, as a matter of law, state a claim for relief. We decline to craft common law ERISA claims or exercise supplemental jurisdiction over the Plaintiffs' state law claims. Accordingly, we grant the Defendants' motions to dismiss.